UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIMOTHY J. ENGEL | : | |
|     Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-07-cv-1256 (JCH) |
| | : | |
| 34 EAST PUTNAM AVE. CORP. | : | MAY 2, 2008 |
|     Defendant | : | |

**RULING ON PLAINTIFF'S MOTION TO REMAND [Doc. No. 19]**

The plaintiff in this diversity action, Timothy J. Engel, initially brought suit in Connecticut state court against defendant 34 East Putnam Ave. Corp. ("34 East"). Engel's Complaint alleged only state law causes of action against the defendant (his former employer), all of which were related to an agreement that was allegedly entered into between the parties. On August 17, 2007, 34 East removed the action to federal court. 34 East alleged that complete diversity existed between the parties because Engel was a citizen of New York, and 34 East was a citizen of Delaware (its place of incorporation), and Massachusetts (its purported principal place of business). See 28 U.S.C. § 1332(c)(1) (defining corporate citizenship for purposes of diversity jurisdiction).

On October 9, 2007, Engel filed a Motion to Remand [Doc. No. 19], contending that removal was improper because 34 East's principal place of business was actually in Connecticut, not Massachusetts, making 34 East a Connecticut citizen. See 28 U.S.C. § 1441(b) (prohibiting removal when a defendant is a citizen of the forum state). For the reasons that follow, the court **GRANTS** the Motion insofar as it seeks remand, and **DENIES** the motion insofar as it seeks attorney's fees.

1

## I. TIMELINESS

Although no party has raised the issue, Engel's Motion faces a potentially significant procedural hurdle. Under 28 U.S.C. § 1447(c), a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." Here, Engel sought remand on the sole grounds that the defendant is a citizen of the forum state. Engel therefore did not seek remand based on the lack of subject matter jurisdiction, see Shapiro v. Logistec USA Inc., 412 F.3d 307, 313 (2d Cir. 2005), and the Motion to Remand was subject to the 30-day filing limit. Engel missed this deadline by 23 days.

Had the defendant called this timeliness issue to the court's attention, the court would have been obliged to deny the Motion to Remand as untimely, as section 1447(c) creates a time limit that the court "lack[s] authority" to ignore. Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642, 644 (2d Cir. 1993). However, the defendant never mentioned the timeliness issue when it opposed plaintiff's Motion. Thus, unless the 30-day time limit is jurisdictional, defendant has waived the rule's application through silence. See Kontrick v. Ryan, 540 U.S. 443, 455-56 (2004) (discussing the difference between jurisdictional time limits, which cannot be waived based on a party's litigation conduct, and inflexible claim-processing rules, which "can nonetheless be forfeited if the party asserting the rule waits too long to raise the point").

For several reasons, the court concludes that the 30-day time limit is not jurisdictional. First, while the 30-day time limit is "plainly mandatory," the Second Circuit has "never held it to be jurisdictional, nor is there any statutory language that purports to limit the court's power to consider an overdue motion." Phoenix Global Ventures, LLC

v. Phoenix Hotel Assocs., Ltd., 422 F.3d 72, 75 (2d Cir. 2005).  Indeed, in Phoenix Global, the Second Circuit permitted a district court to treat an untimely motion as timely filed, at least when the party had attempted (but failed) to file the motion in a timely manner.  See id. at 75-76.  Although the case did not definitively address the fact pattern before this court, Phoenix's logic suggests that district courts retain some authority to determine the point at which a motion to remand is "made" within the meaning of Section 1447(c).  Accordingly, because the defendant apparently believed that Engel's motion was timely, the court deems Engel's motion to have been "made" within the 30-day time limit.

Second, the court finds it instructive that a motion to remand is itself a mere motion for relief, rather than a complete "case."  Generally, "jurisdictional" limitations refer to limits on the court's authority to hear a case, rather than limits on a court's authority to here motions in a case otherwise properly before the court.  See Scarborough v. Principi, 541 U.S. 401, 413 (2004) (explaining that a statutory time limit for bring an attorneys' fee petition was not jurisdictional, as the time limit governed ancillary relief, rather than the court's authority to hear a particular class of cases); Kontrick, 540 U.S. at 453-55 (discussing the difference between a court's authority to hear a case, and rules that simply tell a court how to process claims in cases that Congress has permitted these courts to hear).  Here, there is no question that the court has the authority to hear the lawsuit before it, if there is complete diversity between the parties, and the amount in controversy is satisfied.  Like the motion in Scarborough, Engel's Motion for Remand seeks only a particular kind of relief, to be awarded in a case that the court is authorized to hear.

It is true, of course, that the 30-day time limit is a limit expressly contained in a statute. And under the Supreme Court's decision in Bowles v. Russel, 127 S. Ct. 2360 (2007), one might think that this statutory time limit was therefore jurisdictional. See id. at 2364-65 (explaining that there is "jurisdictional significance" to the fact that a time limit is contained in a statute, rather than in a rule of court). Notwithstanding Bowles, however, it would be inaccurate to conclude that all statutory time limits are jurisdictional. See Diaz v. Kelly, 515 F.3d 149, 153 (2d Cir. 2008); cf. Bowles, 127 S. Ct. at 2365 (recognizing that Scarborough involved a statutory time limit that was not jurisdictional). Statutes of limitations, for example, are generally regarded as defenses to claims and are therefore not jurisdictional. Diaz, 515 F.3d at 153. Here, the court concludes that the 30-day time limit for filing a motion to remand operates similar to a statute of limitations. Just as a statute of limitations is designed to give a defendant repose from a potentially stale claim, the 30-day limit is designed to give the defendant the repose of knowing which forum it will be able to litigate in. Cf. Pierpoint v. Barnes, 94 F.3d 813, 818 (2d Cir. 1996) (explaining that the 30-day limit in section 1447(c) was promulgated to prevent plaintiffs from sitting on a remand motion indefinitely, waiting to see the progress of federal court litigation before deciding whether to litigate in state court). If a defendant is willing to overlook the delay, it makes sense to allow courts to honor that choice. Cf. Mensah v. World Truck Corp., 210 F. Supp. 2d 320, 321-22 (S.D.N.Y. 2002) (finding that the interests of justice supported remand in a case where the motion to remand was untimely, but all parties had consented to remand).

Finally, the court is aided in its conclusion by the general rule that statutory rights of removal must be "strictly construed" against removal. See Syngenta Crop Protection,

Inc. v. Henson, 537 U.S. 28, 32 (2002). With such a backdrop, it is difficult to conclude that Congress intended for the 30-day limit on remand motions to be jurisdictional. Instead, the court concludes that the 30-day limit can be waived by the defendant's silence. Thus, although Engel's remand motion was untimely, the court may consider it.

## II.   34 EAST'S PRINCIPAL PLACE OF BUSINESS

Having dealt with the threshold timeliness issue, the court must now confront Engel's Motion to Remand. If Engel is correct that 34 East's principal place of business is in Connecticut, then the case must be remanded to state court. See 28 U.S.C. §§ 1332(c)(1), 1441(b).

### A.   Background

In support of the Motion to Remand, Engel has supplied his own Declaration laying out his view of the relevant facts. 34 East has countered with the Declaration of its President, Thomas Derecktor, in which 34 East lays out a somewhat different view of the facts. Because the court has not held an evidentiary hearing on the matter, the court will assume that it must take the facts in the light most favorable to the defendant. Cf. Marine Midland Bank N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (holding that when the defendant challenges personal jurisdiction, a plaintiff need only make a prima facie showing of jurisdiction if the district court has not held an evidentiary hearing). The court notes, however, that the defendant bears the burden of showing that removal is proper. United Food & Commercial Workers Union v. Centermark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994). Thus, to the extent that evidence in plaintiff's declaration is not challenged by defendant's evidence, the court will accept plaintiff's evidence as true.

34 East is a corporation whose sole purpose is to own and operate a commercial office building in Greenwich, Connecticut. Derecktor Dec. at ¶ 4; Engel Dec. at ¶ 4. For approximately 20 years, Engel managed 34 East's day-to-day operations. His duties included overseeing repairs and maintenance, attracting new tenants, entering into contracts with vendors, and performing other day to day duties. Engel Dec. ¶ 8. All of 34 East's physical assets are located in Connecticut, and 100% of the company's revenues are derived from its building in Connecticut. Id. at ¶¶ 5-7.

In April 2007, Engel was terminated from his position as the property manager of 34 East. Derecktor Dec. at ¶ 11. Derecktor replaced him with a management company, Allen Management, which is based in Greenwich. Id. at ¶ 12; Engel Dec. at ¶ 9. Allen Management is not a shareholder, director, employee, or affiliate of 34 East. Instead, it is exclusively a real estate manager that operates pursuant to a contractual agreement with 34 East. Derecktor Dec. at ¶ 13. Currently, 34 East has no "employees" in Connecticut, Id. at ¶ 22, and it appears to have no "employees" at all, unless Derecktor or Allen Management is considered an employee of the company.

All shares in 34 East are owned by a family trust, with Derecktor as the current trustee. Id. at ¶¶ 7-8. The trust also owns a second company, 151 East Post Road Corp. ("151 East"), which is a single purpose entity that owns a commercial office building in White Plains, New York. Id. at ¶ 4. Derecktor treats both companies as a "family business," and he makes the two companies' "executive and business decisions." Id. ¶ 5. Derecktor also operates an independent business called "TracRac," which has its offices in Massachusetts. Id. As of July 2007, Derecktor was conducting all of his 34 East and 151 East business out of his TracRac office. Id. ¶ 6.

6

In his capacity as President of 34 East, Derecktor makes what could best be described as "high level" decisions. Accordingly, Derecktor decides when the company will pay distributions to the family trust, he conducts weekly reviews of the check register in which he approves checks to be sent for payment, he conducts monthly reviews of the company's budget, he conducts monthly reviews of the tenant report, and he approves all expenses in excess of $500. Id. ¶ 17. Derecktor also has the final responsibility for approving tenant leases, as the property manager does not have the authority to enter into leases without Derecktor's approval. Id.

34 East has never been registered to do business in the Commonwealth of Massachusetts. Id. ¶ 30. However, Derecktor maintains that the company is currently in the process of completing such a registration, in light of the corporate changes that took place in April 2007.[1] Id. There is no indication that 34 East directly interacts with any member of the public in Massachusetts.

B. Discussion

A corporation is a citizen of the state in which it is incorporated, and the state in which it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). Although it is relatively simple to determine a company's state of incorporation, it can be much more challenging to determine its principal place of business. R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 654 (2d Cir. 1979).

In R.G. Barry, the Second Circuit laid out the appropriate framework for this inquiry. The court noted that there have been two types of tests applied. Id. at 654-55.

---

[1] Presumably, the "corporate changes" are Engel's termination and replacement.

The first test, known as the nerve center test, focuses on identifying "the place where overall corporate policy originates." Id. at 655. The second test seeks to identify the state in which the corporation "has its most extensive contacts with, or greatest impact on, the general public." Id. The nerve center test is appropriately employed when corporate operations are spread across a number of different states, while the competing test is more appropriately employed when corporate operations are more centralized. Id.

Here, the court concludes that it should not apply the nerve center test, and that it should instead determine where the corporation has its most extensive contacts. This is not a case in which 34 East has far-flung operations in many states.[2] Instead, high-level management and policy decisions are made in one state, and virtually all of the company's interaction with the public is made in a single other state. That was essentially the situation in R.G. Barry, and the court declined to place any significant weight on the nerve center test. See id. at 656.[3]

Following R.G. Barry, and emphasizing the "most extensive contacts" test, it is

---

[2] Contrary to 34 East's suggestion, it is irrelevant that Derecktor "treats" 34 East and 151 East as part of the same family business. 151 East is not a defendant in this action, and it is a legally separate company. Thus, while Derecktor's family trust may have more dispersed operations, the defendant has ties to only two states, Connecticut and Massachusetts.

[3] Defendant maintains that R.G. Barry applied a "consolidated test" that looked at elements of both tests. Mem. in Opp. at 6. Even if that were true, the court in R.G. Barry ultimately placed significant weight on the fact that the corporation had its most extensive contacts with one state, notwithstanding the fact that most high level decisions were made in another state. Whatever nomenclature is used to describe the test applied in R.G. Barry, it was at minimum a test that placed little weight on the location of a corporation's nerve center.

plain that 34 East must be deemed a citizen of Connecticut. 34 East is a sole-purpose entity whose only business is to lease out real property in Connecticut. All or virtually all of the defendant's interaction with the outside world is in Connecticut, through a Connecticut-based management company. Although Derecktor apparently approves leases in Massachusetts, there is no evidence that a single customer is even aware of 34 East's Massachusetts ties. And from all the evidence before this court, it appears that Connecticut is the jurisdiction in which 34 East is least likely to suffer local prejudice. Cf. id. at 656.[4]

## III. ATTORNEY'S FEES

In his Motion, Engel also seeks attorney's fees for what he contends is a plainly improper removal. The federal remand statute allows a party to recover "actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Absent unusual circumstances, however, Engel may only recover attorney's fees if the "removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The court retains discretion to consider if unusual circumstances are present that would otherwise justify or negate a fee award. Id.

Here, the defendant had an objectively reasonable basis for removal. It was not

---

[4] 34 East relies in significant part on Danbury Bowlarama Corp. v. RCA Corp., 414 F. Supp. 354, 356-57 (S.D.N.Y. 1976), which it contends supports its position that its principal place of business is in Massachusetts. However, Danbury Bowlarama was decided before the Second Circuit's decision in R.G. Barry, and it emphasized the "nerve center" test over the alternative test. To the extent Danbury Bowlarama can be said to support the defendant's position, the court declines to follow it in light of the Second Circuit's more on-point analysis in R.G. Barry.

9

unreasonable for the defendant to think it could prevail.  The court also does not find that there are other special circumstances that warrant a fee award.

Even if removal was objectively unreasonable, however, the court would nonetheless exercise its discretion to deny a fee award.  "A plaintiff's delay in seeking remand . . . may affect the decision to award attorney's fees."  Id. at 141.  Here, the court finds it highly relevant that Engel did not move to remand the case until after the statutory time period for making such a motion had expired.  It would be ironic if Engel could obtain fees by arguing that removal lacked objective basis, when it took Engel over 50 days to determine that was his position.

## IV.     CONCLUSION

Engel's Motion to Remand [Doc. No. 19] is **GRANTED** in so far as it seeks to remand the case, and **DENIED** in so far as it seeks attorney's fees.  The case is remanded to the Connecticut Superior Court.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 2nd day of May, 2008.


    /s/ Janet C. Hall
Janet C. Hall
United States District Judge